UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MARRS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 5463 |
| v. ) | |
| ) | Judge John W. Darrah |
| MOTOROLA, INC.; MOTOROLA ) | |
| DISABILITY INCOME PLAN; MOTOROLA ) | |
| POST-EMPLOYMENT HEALTH BENEFITS ) | |
| PLAN; and MOTOROLA, INC. PENSION ) | |
| PLAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Marrs, filed a three-count complaint against the Defendants, (collectively, "Motorola"), alleging three Employee Retirement Income Security Act ("ERISA") violations. Presently before the Court is Motorola's Motion to Dismiss Counts II and III of Marrs' Complaint.

### BACKGROUND

A reading of Marrs' Complaint supports the following summary of the alleged operative conduct of the parties.

Prior to 1997, Marrs worked as an executive at Motorola, Inc. On January 31, 1997, Marrs ceased working due to a disability. After a period of short-term disability, Marrs was placed on long-term disability and received income benefits under the Motorola Disability Income Plan. Marrs also continued to receive health benefits coverage under the Motorola Post-Employment Health Benefits Plan and service credit under the Motorola, Inc. Pension Plan. Until January 1, 2003, Marrs met the Motorola Disability Income Plan's definition of "disabled" or "disability" and thus qualified for, and

received, all of the above-mentioned benefits under the Motorola plans. The Motorola Disability Income Plan defined "disability" or "disabled" as follows:

> Except as provided in subparagraph (b) below, the continuous inability of the Participant to perform the essential duties pertaining to his/her usual and customary occupation in substantially the same manner as immediately prior to incurring a medically determinable physical or mental impairment.
>
> * * *
>
> After qualifying for and receiving payment of one hundred eighty (180) days of Short Term Disability under Section 4, the ongoing and continuous inability of the Participant to engage in any Substantial and Gainful Employment by reason of meeting a medically determinable physical or mental impairment that can be expected to be of a long-continued and indefinite duration.

Motorola amended its disability income plan, effective January 1, 2003. This amendment imposed a time limit on the duration of benefit payments for mental, nervous, alcohol, or drug-related disabilities ("MNAD disabilities"). Motorola classified Marrs' disability as a MNAD disability. Section 6.3 of the Motorola, Inc. Pension Plan states:

> A Participant whose employment with the Company terminates because of Disability prior to his Normal Retirement Age shall be eligible to receive a Disability benefit under the Plan. *While the Participant is Disabled hereunder, and prior to his Annuity Starting Date, the Participant shall continue to be credited with Benefit Service and Vesting Service for purposes of the Plan; provided, however, that the Participant shall cease to accrue additional Benefit Service or Vesting Service due to Disability on . . . the date benefits cease under the Motorola Disability Income Plan . . .* (Emphasis added).

Motorola terminated Marrs' disability payments on or about December 31, 2004. Marrs' coverage under Motorola's health plan also ceased, and Marrs was told that his pension service credits would stop accruing as of October 31, 2005, based on Section 6.3 because of the revocation

2

of his disabled status pursuant to the MNAD Amendment. After exhausting the administrative remedies provided by ERISA, 29 U.S.C. § 1133, Marrs filed a three-count Complaint against Motorola. Marrs' Complaint alleges: (1) Recovery of Benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) or, alternatively, breach of fiduciary duty (Count I); (2) violation of ERISA's § 204(g) Anti-Cutback Rule (Count II); and (3) Interference with Protected Rights pursuant to ERISA § 510. Motorola now moves to dismiss Counts II and III for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

In reviewing a motion to dismiss, the court considers all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is warranted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Vill. Of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## ANALYSIS

Motorola first moves to dismiss Count II of Marrs' Complaint. Count II charges Motorola with violating § 204(g) of ERISA (codified as 29 U.S.C. § 1054(g)) by amending its plan and, subsequently, disallowing Marrs from continuing to accrue service credits towards his pension. Motorola counters that Marrs' continued service credit benefits were not "accrued benefits" under § 204(g)(1), nor were they an early retirement benefit or retirement-type subsidy under § 204(g)(2).

Section 204(g)(1), known as ERISA's anti-cutback provision, provides, with exceptions not relevant here, that the "accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." 29 U.S.C. § 1054(g)(1). Under § 1002(23), "accrued benefit" is defined under ERISA as "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23); *Arndt v. Security Bank S.S.B. Employees' Pension Plan*, 182 F.3d 538, 540 (7th Cir. 1999) (*Arndt*) (affirming dismissal of § 204(g)(2) claim). Benefit rights do not accrue prospectively. *Hackett v. Xerox Corporation Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). Similarly, § 204(g)(2) requires that a reduction of an early retirement benefit or a "retirement-type subsidy" be treated as a reduction of an accrued benefit. 29 U.S.C. § 1054(g)(2); *Arndt*, 182 F.3d at 540-41. Therefore, a decrease of an early retirement benefit or retirement-type subsidy through a plan amendment is, likewise, forbidden. 29 U.S.C. § 1054(g)(2); *Arndt*, 182 F.3d at 540-41. However, an employer or provider can change its disability benefits by amending the plan. *Arndt*, 192 F.3d at 541, citing *Williams v. Plumbers & Steamfitters Local 60*, 48 F.3d 923 (5th Cir. 1995).

First, Marrs' continued service credits after January 1, 2003, are not "accrued" pursuant to § 204(g)(1). Article Four of the Motorola, Inc. Pension Plan states that a participant shall receive credit for "vesting service" upon completion of each twelve-month period of service and for "benefit service" based on "completed full years and fractions of years in excess of completed full years . . ." Finally, benefit service terminates "when the Participant quits, retires, is discharged or dies. . . ." The Seventh Circuit made clear in *Arndt* that continuing service credits while on disability accrue on a year-to-year basis and do not accrue on the date that disability begins. *Arndt*, 182 F.3d at 541-42. Identical to the plan considered in *Arndt*, the Motorola, Inc. Pension Plan

4

required Marrs to earn the service credits by either returning to work for Motorola or by continuing to qualify as "disabled" under the Motorola Disability Income Plan; otherwise, they are not "accrued." Article Four of the Motorola Plan, as set out above, specifically provides that vesting and benefit services must be completed before they are accrued. When Motorola amended its plan to exclude MNAD disabilities, Marrs no longer qualified for disability benefits under the Motorola Disability Income Plan. Nor did Marrs return to work for Motorola; therefore, the service credits after the plan amendment were not earned. Accordingly, Marrs' pension service credits after January 1, 2003, the date of the plan amendment, were not accrued; and Marrs cannot state a cause of action under § 204(g)(1).

Next, Marrs' continued service credits do not qualify as an early retirement benefit or a "retirement-type subsidy" under § 204(g)(2). Although § 204(g)(2) refers to the definition of "retirement-type subsidy" provided by the regulations, the regulations do not provide a definition. *Arndt*, 182 F.3d at 542 ("there is no regulation yet promulgated which defines the term"). The Seventh Circuit has looked to the Senate report for the Retirement Equity Act of 1984 for guidance, which provides:

> . . . [T]he term "retirement-type subsidy" is to be defined by the Treasury regulations. The committee intends that under these regulations, a subsidy that continues after retirement is generally to be considered a retirement-type subsidy. The committee expects, however, that a qualified disability benefit. . . will not be considered a retirement-type subsidy.

*Arndt,* 182 F.3d at 543 (citing S. Rep. No. 98-575 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2576). Moreover, the Treasury stated in § 411(a)(9) of the Internal Revenue Code that "a normal retirement benefit is determined without regard to "disability benefits not in excess of the qualified

5

disability benefit." *Arndt*, 182 F.3d at 544 (quoting 26 U.S.C. § 411(a)(9)). "Under section 411(a)(9), a qualified disability benefit can be provided up to the maximum normal retirement benefit and can commence either at the time of disability or at normal retirement age." *Arndt*, 182 F.3d at 543, *quoting* Treasure Decision 8360, 56 Fed. Reg. 47524, 47431 (1991)). Significantly, the Treasury also said that *"[a] benefit attributable to the period while an employee is disabled continues to be characterized as a qualified disability benefit..." Arndt*, 182 F.3d at 543 (emphasis in original), *quoting* Treasure Decision 8360, 56 Fed. Reg. 47524, 47431 (1991)).

Therefore, *Arndt* teaches that Marrs' continuing service credits were disability benefits, not retirement benefits. First, Marrs was entitled to these only so long as he maintained disability status with Motorola; Marrs' continuing service credits were based entirely upon his maintenance of those disability benefits. When Marrs failed to qualify as disabled under the MNAD amendment, he could only earn his continued service credits through "service," *i.e.*, active employment with Motorola. As in *Arndt*, Marrs' disability benefit "is the service imputed to him while he remains disabled"; and, thus, it is a benefit arising out of disability. *Cf. Arndt*, 182 F.3d at 544 (concluding that service credit was a benefit arising out of disability). Accordingly, Marrs has failed to state a claim under ERISA § 204(g)(2).

Motorola also moves to dismiss Count III of Marrs' Complaint. Count III alleges that Motorola violated § 510 of ERISA (codified as 29 U.S.C. § 1140) in that the MNAD amendment imposed unlawful limitations on Marrs' right to ongoing disability income payments, continued health coverage, and pension service accruals, causing Marrs to lose those benefits.

Section 510 of ERISA provides that it is unlawful for an employer "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary" that interferes "with

6

the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140; *McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 670 (7th Cir. 1993) (*McGath*). Participants do not have rights to treatment that is contrary to the terms of the plan. *See McGath*, 7 F.3d at 670. Rather, § 510 was intended to protect the employment relationship against actions designed to interfere with benefit rights. *McGath*, 7 F.3d at 668; *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990) (*Deeming*). As the Seventh Circuit stated in *Deeming*:

> Simply put, § 510 was designed to protect the employment relationship which *gives rise* to an individual's pension rights . . . . This means a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.

*Deeming*, 905 F.2d at 1127. (Emphasis in original). Accordingly, a plaintiff instituting a § 510 action must claim that the employer-employee relationship was changed in a discriminatory or wrongful way. *McGath*, 7 F.3d at 668; *Deeming*, 905 F.2d at 1127. For example, an employer's repeatedly amending the terms of a plan immediately before an employee would otherwise achieve eligibility for benefits pursuant to the pre-altered plan, even if done specifically to avoid payment of benefits to the employee, is not prohibited by Section 510 because it is not an action taken against the employment situation itself. *See McGath*, 7 F.3d at 668.

Motorola argues that Marrs' § 510 claim should be dismissed because it is premised solely on a benefit plan amendment and not on an employer-employee relationship wrongfully affected by the plan amendment. Plaintiff counters that his receipt of benefits under the ERISA plan is the "employment relationship," and the MNAD Amendment is the change in employer-employee relationship in violation of § 510. However, under this theory, any time an individual's ERISA

7

benefits are adversely affected, so is his employment relationship. This interpretation would render superfluous the statutory specific language of § 510 requiring "discharge, fine, suspension, expel, discipline, or discriminate" and would effectively obviate the Seventh Circuit's interpretation of the statute in *Deeming* and *McGath*. Plaintiff's alleged loss of benefits without any change in employer-employee relationship under the holdings of those cases fails to state a § 510 claim. *See McGath*, 7 F.3d at 668; *Deeming*, 905 F.2d at 1127; *Hermna v. Central States Southeast & Southwest Areas Pension Fund*, 03 C 1010, 2003 WL 213102278 (N.D. Ill. June 6, 2003) (dismissing § 510 claim because plan amendments that resulted in lost benefits did not affect employer-employee relationship).

## CONCLUSION

For the foregoing reasons, Motorola's Motion to Dismiss Counts II and III is granted.

Dated: March 15, 2006

JOHN W. DARRAH
United States District Court Judge

8