IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MARRS, on behalf of himself )
and all others similarly situated, )
                                                   )
    Plaintiffs, )
                                                   )
       v. )
                                                   )   No. 05 C 5463
MOTOROLA, INC., MOTOROLA )   Magistrate Judge Susan E. Cox
DISABILITY INCOME PLAN, )
MOTOROLA POST-EMPLOYMENT )
HEALTH BENEFITS PLAN, and )
MOTOROLA, INC. PENSION PLAN, )
                                                   )
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Michael Marrs, on behalf of himself and the class members (collectively referred to as "Marrs"), claims that defendants (collectively "Motorola") violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, when they terminated his long-term disability benefits, as well as his benefits under the Motorola Post-Employment Health Benefits Plan, and his service credit under the Motorola, Inc. Pension Plan.[1] Marrs argues that at the time he qualified for benefits while working at Motorola, his benefit plan promised that no amendments could change the plan in a way that would adversely affect his right to continue receiving benefits. Motorola argues, however, that Marrs's benefits were not vested and that the company could amend the plan to cap benefits for plaintiff's condition, and others like him, at any time. Presently before the Court are Marrs's motion for summary judgment [dkt 71] and Motorola's cross-motion for

---

[1] Marrs's ability to receive benefits under Motorola's Post-Employment Health Benefits Plan and the Motorola, Inc. Pension Plan directly depend on Marrs's eligibility to receive long-term disability benefits. Therefore, the analysis here will only discuss Marrs's eligibility to receive long-term disability benefits under the Motorola Disability Income Plan.

summary judgment [dkt 73]. For the following reasons, Motorola's motion is granted and Marrs's motion is denied.

## I.     Background[2]

Marrs was employed as an executive by Motorola for several years before he ceased working on January 31, 1997, due to a bipolar affective disorder.[3] At that time Marrs began receiving short-term and, thereafter, long-term disability benefits pursuant to Motorola's 1997 Disability Income Plan ("the 1997 Plan"). The 1997 Plan did not contain any limit on the amount of time an employee with Marrs's condition, unable to return to work, could receive continued benefits. If an employee met the 1997 Plan's definition of "Disabled" or "Disability," defined below, that employee received disability income benefits under the Plan until age 65 or death, whichever came first:

> the ongoing and continuous inability of the Participant to engage in any Substantial and Gainful Employment by reason of meeting a medically determinable physical or mental impairment that can be expected to be of a long-continued and indefinite duration.[4]

Because Marrs was deemed totally disabled, Marrs continued receiving benefits for over seven years. However, effective January 1, 2003, Motorola amended the 1997 Plan to cap benefits for participants disabled due to mental, nervous, alcohol or drug-related conditions. Specifically, subsection 6.5 of the new amended plan, Motorola's 2003 Disability Income Plan ("the 2003 Plan")

---

[2]The facts are taken from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text. Facts taken from defendant's response to plaintiff's Local Rule 56.1 statements hereinafter cited as DRSOF ¶ ___ ; plaintiff's response to defendant's Local Rule 56.1 statements hereinafter cited as PRSOF ¶ ___ .

[3]DRSOF ¶ ¶ 25-27; it is disputed between the parties whether Marrs ceased working due to only bipolar affective disorder or whether he also applied for short-term disability due to coronary atherosclerosis. For purposes of this motion, the dispute is immaterial.

[4]PRSOF ¶ 38.

provided:

> The lifetime aggregate maximum Long Term Disability Benefit for a Participant's Long Term Disability(ies) for which the primary diagnosis is a Mental, Nervous, Alcohol, Drug-Related Condition is twenty-four (24) months...[5]

Motorola classified Marrs's disability as one fitting into this category. This new provision, therefore, capped Marrs's receipt of disability benefits to 24 months. In September 2002, Motorola informed plan participants of the amendment and on December 31, 2004 Marrs's benefits ceased.[6]

Marrs appealed the application of the amendment to Motorola's administrative committee. On February 11, 2005 the plan administrator denied Marrs's final appeal.[7] With the aid of counsel Marrs requested, and received, permission to file an extraordinary second level appeal.[8] Marrs again challenged the application of the January 1, 2003 amendment to Marrs and on August 19, 2005 Marrs's second appeal for long-term disability benefits was denied.[9] On September 21, 2005, after exhausting his pre-suit appeals, Marrs filed the present action. On October 23, 2006, Marrs filed his amended complaint claiming an ERISA violation and requesting that he, and the other class members, be restored all benefits as of January 1, 2005. On September 25, 2007 the parties stipulated to certify the following class:

> All persons who, prior to January 1, 2003, became entitled to long term disability benefits on account of a mental, nervous, alcohol or drug related "Disability," within the meaning of the Motorola Disability Income Plan, who were eligible for benefits under the Motorola Post-Employment Health Benefits Plan by virtue of their entitlement to long term disability

---

[5] PRSOF ¶ 20.

[6] PRSOF ¶ 39, 45.

[7] PRSOF ¶ 47.

[8] PRSOF ¶ 56.

[9] PRSOF ¶ 56, 58.

benefits, and/or who received additional pension service accruals under Section 6.3(b) of the Motorola, Inc. Pension Plan by virtue of their entitlement to long term disability benefits and whose benefits and pension service accrual under those plans were terminated as a result of the January 1, 2003 amendments to the Motorola disability Income Plan, which imposed a twenty-four month limit on the duration of benefit payments for mental, nervous, alcohol, and drug related ("MNAD") disabilities.

The present motions followed.

## II.     Standard for Summary Judgment

To prevail on a motion for summary judgment under Federal Rule of Civil Procedure 56, a party must present evidence that demonstrates the absence of a genuine issue of material fact.[10] The party seeking summary judgment must identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes shows an absence of a genuine issue of material fact.[11] The moving party is not required to disprove the opponent's case but, rather, must establish a lack of evidentiary support for the non-moving party's position.[12] Summary judgment is appropriate where the evidence "'would require a directed verdict for the moving party.'"[13] When considering cross-motions for summary judgment, a court is "obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made."[14]

## III.    Analysis

Marrs maintains that under the 1997 Plan he received, essentially, a vested disability insurance benefit and Motorola therefore violated ERISA when it capped his particular benefits to

---

[10]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[11]*See* Fed.R.Civ.P. 56(c); *see also Celotex Corp.*, 477 U.S. 324.

[12]*Celotex Corp.*, 477 U.S. at 325.

[13]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).

[14]*Gazarkiewicz v. Town of Kingsford Heights,* 359 F.3d 933, 939 (7th Cir. 2004).

24 months. Though regrettably, the Court disagrees that Marrs ever had a vested interest in his disability benefit. Rather, Marrs simply had a *benefit* that Motorola was free take away at any time, which it did pursuant to amended terms in the 2003 Plan.

The Court must first address what standard of review to apply to the denial of disability benefits under ERISA. Whether a *de novo* standard or a more deferential standard is applied depends upon the language in the Plan. "Benefit determinations are reviewed *de novo* unless the trustees of the plan have discretionary authority to determine eligibility."[15] When a plan trustee has discretion to determine eligibility, the arbitrary and capricious standard applies.[16]

The parties agree that the deferential standard applies in this case because the 2003 Plan grants the administrative committee discretion to interpret the plan ("the Committee shall have sole and complete discretionary authority... to construe and interpret the Plan, decide all questions of fact and questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder.").[17] The Court takes note, however, that the arbitrary and capricious standard "is not a rubber stamp and deference need not be abject."[18] If there is an absence of reasoning in the record to support the administrator's determination, even under a deferential standard of review, the Court will not uphold the termination of Marrs's benefits.[19] Additionally, a fiduciary's conflict of interest can be a factor in a court's analysis but there is no heightened standard of review simply because

---

[15]*Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1437 (7th Cir. 1997).

[16]*Trombetta,* 102 F.3d at1437.

[17]Motorola/Marrs 000119.

[18]*Hackett v. Xerox Corp. Long-term Disability Income Plan,* 315 F.3d 771, 774 (7th Cir. 2003).

[19]*See Hackett,* 315 F.3d at 774-75.

a corporation or insurer interprets its own plan to deny benefits.[20] Generally, a court "will overturn the fiduciary's denial of benefits only if it is 'completely unreasonable.'"[21]

Marrs's overall position is that his benefits vested. Marrs acknowledges the general rule that employers are free to amend or terminate welfare benefits that do not vest absent the plan documents including a written, clear intent to vest.[22] Nonetheless, Marrs claims because the 1997 Plan included a limitation on amendments, his particular benefits were not affected by the changes Motorola implemented. There is no dispute that Motorola could "amend the Plan from time to time in any manner subject to the provisions of Subsection 12.3." It is only, rather, subsection 12.3 that Marrs asserts the administrative committee incorrectly interpreted. That provision restricted amendments that would "adversely affect the rights of any Participant to receive benefits with respect to periods of Disability prior to the adoption date of the action amending or terminating the Plan..."Marrs argues this language prohibited Motorola from limiting his benefits because amendments were not to "affect [his] rights to receive benefits." As read by Marrs, if the disability period *started* prior to the amendment, then no amendment could affect his continued receipt of those benefits. In other words, because Marrs started receiving benefits pursuant to the 1997 Plan, and at that time those benefits were to continue for as long as he was disabled (or died or turned 65), he argues those particular benefits could not be taken away through any amendment.

Motorola claims, however, that subsection 12.3 only prohibits it from "clawing back," or requiring Marrs to return benefits that he already received or that had accrued. Subsection 12.3 does

---

[20]*Hess v. Reg-Ellen Machine Tool Corp.,* 423 F.3d 653, 659 (7th Cir. 2005).

[21]*Hess,* 423 F.3d at 658.

[22]*See Vallone v. CNA Financial Corp.,* 375 F.3d 623, 632 (7th Cir. 2004)(stating that "'[e]mployers ... are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'").

not mean, according to Motorola, that all benefits that started before the amendment were somehow "vested." The Court agrees. Though the language found in subsection 12.3 could be interpreted in the way Marrs claims, Marrs's alternative interpretation does not render the committee's conclusion arbitrary and capricious. If the committee's interpretation of the plan language is sound, it is insulated from attack.

First, and what he deems most important, Marrs relies on Motorola's prior course of conduct to demonstrate that the 2003 amendments should not affect his benefits that began in 1997. Marrs refers the Court to a letter, sent by Motorola to Marrs dated June 12, 2003, that informed Marrs he was not eligible to receive increased benefits because he became disabled prior to the plan amendment, or prior to January 1, 2003. Marrs claims that if he could not receive the increase in benefits because he became disabled prior to the amendment, it conversely makes sense that he would not be affected by the amendment capping his benefits, which also went into effect on January 1, 2003. The June 2003 letter Marrs proffers as support for this argument is attached to his original complaint. This letter simply explains that pursuant to the 2003 amendments, the disability policy was amended to allow a maximum benefit increase. However, the amendment only applied to participants "that became eligible for Long Term Disability after January 1, 2003."[23] Because Marrs became eligible back in 1997, long before the amendment, the June 2003 letter states that Motorola had incorrectly issued additional benefits to Marrs that he now needed to pay back. Marrs asserts that due to Motorola's position that he was not eligible for the benefit increase - because of his disability onset date - the amendment capping his benefits should also not apply due to his disability onset date.

---

[23]Marrs's Complaint, Exhibit D.

There are two problems with this argument. Most important, it does not appear that Marrs presented this "prior course of conduct" argument at the hearing before the plan administrator. Without a developed record vis-à-vis Marrs's ineligibility for an increase in benefits, addressed in the June 2003 letter, the Court cannot relate it to the present dispute. The Court's review is limited to the record before the administrative committee.[24] As stated by Motorola, Marrs would have needed to appeal the decision outlined in the June 2003 letter, which he did not do. It logically follows that the Court cannot hold the administrator's interpretation of the 1997 Plan in this case as arbitrary and capricious when Motorola's alleged inconsistent conduct was not even brought up before the administrator.

Further, though the Court acknowledges the inference that Marrs is trying to make with the June 2003 letter, the letter standing alone does not demonstrate that the plan administrator's interpretation of the 1997 Plan was unreasonable. The standard is high: a denial of benefits may only be overturned if the plan administrator's interpretation was "downright unreasonable" and here, the Court cannot say that it was based solely on a letter that refers to a different provision in the policy altogether.[25]

The next hurdle Marrs fails to surmount is the fact that similar plan language to that found here was already addressed by this Circuit and interpreted in a way that did not imply vesting. In *Hackett v. Xerox Corporation Long-Term Disability Income Plan*, the plaintiff brought suit

---

[24]*See Hess,* 423 F.3d at 662(stating that "we have consistently held that our review is limited to the record before the administrative committee.").

[25]*See Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 828 (7th Cir. 2002)(stating that a decision may not be overturned unless it is "downright unreasonable").

challenging the termination of his disability benefits.[26] The court first discussed whether a particular plan amendment applied to the plaintiff. Because the plan at issue included language that the plan could not be amended in a way that would "'diminish any rights accrued for the benefit of the participants prior to the effective date of the amendment'" the plaintiff argued that the amendment did not apply, as his benefits had already "accrued."[27] In finding, however, that the amendment did apply, the court held that the plaintiff did not gain an automatic right to indefinite benefits the day he began receiving those benefits; "instead his right to those benefits accrues as the payments become due."[28] The *Hackett* court further explained that the limitation on amendments only applied to mean that no amendment could require the participant to return benefits already received, or alter benefits where payments were already due.[29]

The same analysis applies here. The language found in subsection 12.3 provides that a participant may not be "adversely" affected, with respect to his or her right to receive benefits for "periods of Disability" prior to the amendment. Just as in *Hackett*, because "rights to benefits do not accrue prospectively," any prior periods of disability (paid on a monthly basis) would be shielded from amendments. It logically follows then, that any benefit after the effective date of the amendment would not be shielded from Motorola's right to "amend the Plan from time to time in any manner...," as provided for in the policy.

Marrs interprets the meaning of "periods of Disability" in subsection 12.3, however, to mean

---

[26] 315 F.3d 771, 774 (7th Cir. 2003).

[27] *Hackett,* 315 F.3d at 774.

[28] *Id.*

[29] *Id.*

one continuous period. But again, this interpretation does not follow the already established case law. "[Marrs] did not, upon initial determination of eligibility, accrue a right to benefits indefinitely; instead his right to those benefits accrues as the payments become due."[30] As described in *Hackett*, Motorola would not have been able to pass an amendment in January that would reduce Marrs's benefit for the previous December because those December benefits would have already accrued. Motorola could, however, amend the policy in January to change Marrs's benefits for the following month, or any month thereafter.[31] That is precisely what Motorola did.

Marrs then asserts the term "periods of Disability" in subsection 12.3 should be considered the same as the defined phrase "Period of Disability," meaning benefits would be locked in after the effective date of the amendment because a "Period of Disability" continues until a participant recovers or dies. Marrs argues that the difference between the two phrases is more likely the result of faulty drafting on Motorola's part. The capitalized term "Period of Disability" is defined in the 1997 Plan as,

> one or more periods of absence from Active Employment due to Disability, and shall include periods of Active Employment not exceeding (30) consecutive calendar days within a Period of Disability, as described in Subsection 8.1.[32]

Motorola contends this argument, again, is inapplicable because it was not raised before the plan administrator but also asserts Marrs's argument: (1) disregards the policy's own rules of construction; (2) makes no sense grammatically; and (3) would render another policy provision meaningless. Marrs refers the Court to the 1997 Plan, which provides that words or phrases "with

---

[30]*See Hackett,* 315 F.3d at 774.

[31]*Id* (providing the same analogy).

[32]Motorola/Marrs 000011.

the initial letter capitalized, shall have the meaning indicated below for purposes of the Plan."[33] The failure to capitalize the P in "periods of Disability" in subsection 12.3 implies, according to Motorola, that the phrase was not meant to take its meaning from the defined "Period of Disability." Rather, the term "periods of Disability," with a lower-case P, should be defined in the ordinary sense to mean an interval of time during which a participant is considered "Disabled," as the administrative committee interpreted the phrase.

Motorola also argues if the amendment authority was intended to protect benefits for all periods of a given Disability, as Marrs defines the phrase, then the limitation would have been stated differently. The provision could have read, for example, that no amendment could apply to Disabilities *commencing before* the amendment. But it did not and instead referred only to, as Motorola states, accrued periods of disability.

On this point, Marrs attempts to support his position by citing a Ninth Circuit case, *Shane v. Albertson's*, *Inc*., where the plan language at issue stated that "[a]ny amendment to the Plan shall be effective only with respect to Total Disabilities which commence on and after the effective date of the amendment."[34] The plan further specified that disabilities commencing prior to any amendment were "to be provided for under the terms of the Plan in effect at the time those disabilities commenced."[35] The court found that because the plaintiff's disability commenced while a 1993 disability plan was in effect, the subsequent disability plan had no application.[36]

---

[33]Motorola/Marrs 000007.

[34]504 F.3d 1166, 1168 (9th Cir. 2007).

[35]*Shane,* 504 F.3d at 1168.

[36]*Id.* at 1169.

Marrs is correct that the limitation on amendments in *Shane* and in the instant case speak to disabilities commencing prior to the amendment. Here, subsection 12.3 refers to "periods of Disability prior to the adoption date" of the amendment, whereas in *Shane,* the language directly refers to disabilities "commencing prior to the effective date" of a plan amendment.[37] The difference here, however, is that the term "commencing" is not included in subsection 12.3. The administrative committee interpreted "periods of Disabilities" as referring to those benefits accrued, not to one continuous period of disability. And though the Court understands Marrs's position - that it is unfair to interpret section 12.3 to refer only to benefits already paid in the past because such renders the promise of benefits illusory - such does not render Motorola's determination wholly unreasonable. This is especially true in light of the case law on this issue in our circuit. As stated before, the arguments presented by Marrs do not show how the administrative committee's decision was arbitrary or capricious.

Then Motorola posits that Marrs's proposed reading of subsection 12.3 would render the language in subsection 1.1 superfluous. Subsection 1.1 provides for the vesting of benefits "with respect to a Participant who became disabled under the Plan as in effect prior to January 1, 1994." Specifically, the 1997 Plan indicates that benefits for participants disabled prior to the above date "continue in force until he or she returns to work for thirty (30) days..." Motorola aptly points out that if Marrs's interpretation of "periods of Disability" were true, there would be no reason to include language specifically vesting benefits for participants who became disabled prior to 1994. Rather, subsection 12.3, under Marrs's interpretation, would afford the same vesting to everyone, obviating any need to specify vesting for pre-1994 disability cases.

---

[37] *See Id.* at 1168(quoting the disability plan at issue).

In response, Marrs simply contends that both subsections 12.3 and 1.1 represent two roads leading to the same result, in that both prohibit any amendment that adversely affects the rights and benefit levels of participants who qualified for benefits prior to the amendment. Again, making reference to the June 2003 letter, Marrs argues a simple point of fairness; just as Motorola told him he was not entitled to any enhancement of his disability benefits, he likewise should not be subject to a diminution. Here, again, though our result does little to "cushion the hardship" of those in Marrs's position, the court agrees that the distinction between these two provisions works in Motorola's favor.[38]

Finally, Marrs compares several cases to the facts here in an effort to show vesting. Marrs cites *Filipowicz v. American Stores Benefit Plans Committee*, where the court found that a right to life insurance benefits vested on the date of the insured's death.[39] In that case the dispute centered around which plan was actually in effect when the insured died. The court then determined that by ignoring that plan in effect at the time, the defendant's denial of benefits was arbitrary and capricious.[40] There is simply no similarity to the present case. A determination that an insured's benefits vested upon her death in no way supports Marrs's position that his disability benefits should automatically vest upon becoming disabled. That is not the holding in *Filipowicz* and Marrs makes no further attempt to explain how *Filipowicz* is applicable. Next, Marrs cites *Call v. Ameritech Management Pension Plan,* where the court addressed the amount owed a participant in a defined-

---

[38] *See Vallone,* 375 F.3d at 626 (noting that the case law in this circuit is well-established but does little to "cushion the hardship of pensioners faced with a new drain on their limited resources.")..

[39] 56 F.3d 807, 813 (7th Cir. 1995).

[40] *Filipowicz,* 56 F.3d at 814.

benefit pension plan.[41] The facts are not instructive to the present dispute but Marrs refers the Court to *Call* as a guide to the level of deference afforded a court under the arbitrary and capricious standard. There, the court analyzed various terms and phrases at issue and found, ultimately, that though the plan administrator had discretion to interpret the plan, the unambiguous terms of the plan left the administrator "no room for the exercise of interpretive discretion."[42] In other words, the court found the plan language at issue unambiguous to the point that the administrator's interpretation lacked "the appeal of common sense."[43] There is simply no application of this flexible deference principle here. Marrs claims that if Motorola's interpretation were to prevail, both plans provide only an illusory promise to continue receiving benefits in the future, which Marrs likens to an interpretation that lacks "the appeal of common sense."[44] But the plan administrator's interpretation is not so unreasonable here where case law supports the position that "[r]ights to benefits do not accrue prospectively," and where another provision in the same policy clearly provides for certain benefits to vest, as discussed above.[45]

Marrs also refers us to a more sympathetic court on the issue of vested benefits, albeit the Second Circuit. Though its reasoning is not binding on this Court, for purposes of completeness we nonetheless address Marrs's principal argument. In *Gibbs v. CIGNA Corporation*, the court addressed the plaintiff's right to disability benefits.[46] In the plan at issue in *Gibbs*, amendments to the disability

---

[41] 475 F.3d 816, 817 (7th Cir. 2007).

[42] *Call,* 475 F.3d at 822-23.

[43] *Id.* at 821.

[44] *See id.*

[45] *See Hackett,* 315 F.3d at 774.

[46] 440 F.3d 571 (2d Cir. 2006).

plan were limited in that "[a]ny modification or termination will not affect your right to benefits from a covered *disability that occurred before* the termination or modification."[47] *Gibbs* held that without an explicit reservation by the defendant to alter disability benefits after a beneficiary becomes disabled, the beneficiary's right to benefits vest.[48] As noted by the *Gibbs* court, this finding is in direct conflict with the Seventh Circuit in *Hackett, supra,* where the court found that employee disability benefits do not vest in perpetuity at the time the employee becomes disabled.[49] This case, therefore, has limited applicability here, where the Second Circuit has clearly taken a different view on the presumption of vesting than our own.

## IV. Conclusion

The applicable law in this circuit compels the court to find in favor of Motorola and against Marrs in this matter because Marrs's disability benefits did not vest when he became disabled and Motorola reserved the right to amend its benefit plan at any time to take away those benefits. Therefore, we cannot find that the plan administrator's interpretation of the plan was arbitrary and capricious. Motorola would better serve its employees by proactively clarifying the provision that limits amendments to ensure that employees understand that benefits accrue only month by month, leaving uncertain any future benefits. Though it would not guarantee that Marrs and the class members could have avoided the position they find themselves in today, such transparency may have thwarted what is now an undoubtedly difficult situation. Marrs's motion for summary judgment [dkt 71] is, therefore, denied and Motorola's cross-motion for summary judgment [dkt 73] is granted.

---

[47] *Gibbs,* 440 F.3d at 577(emphasis in original).

[48] *Id.*

[49] *Gibbs,* 440 F.3d at 577, n. 9.

**IT IS SO ORDERED**


**ENTERED: May 15, 2008**                                        _____

                                                                 UNITED STATES MAGISTRATE JUDGE